**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                                          Case No. 8:25-cr-231-TPB-NHA

SAMUEL ACOSTA,

    Defendant.

_____/

## <u>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS</u>

This matter is before the Court on Defendant Samuel Acosta's motion to suppress, filed by counsel on November 9, 2025.  (Doc. 46).  On December 8, 2025, the United States of America filed a response in opposition.  (Doc. 57).  The Court held a suppression hearing on March 19, 2026.  (Doc. 69).  After reviewing the motion, response, testimony, evidence, legal arguments, court file, and the record, the Court finds as follows:

### <u>Background</u>

This motion concerns the legality of a traffic stop on I-75 in southern Georgia that ultimately led to the discovery of illegal drugs.

On February 24, 2025, Lowndes County, Georgia Deputy Sheriff Alvin Parker was parked in the median of I-75 observing southbound traffic.  He noticed a 2024 gray Ford Expedition drift into the right of its lane, with the vehicle's tires touching the center dotted line.  When the driver noticed Deputy Parker, the driver reduced his speed.  Deputy Parker let the vehicle pass, and then he followed the vehicle for about ten miles.  While he was following the vehicle, Deputy Parker ran

a "FLOCK" computer search that revealed that the rental vehicle's tag had previously traveled from Florida to Houston, Texas, and then to Oklahoma City, Oklahoma, before arriving in McDonough, Georgia.  It took a while for him to catch up to the vehicle, but Deputy Parker eventually activated his emergency lights and initiated a traffic stop at approximately 2:42 pm.  Deputy Parker is a trained canine officer and his dog, "Chase," was with him in the back of his patrol car during this entire encounter.[1]  Defendant Samuel Acosta was the driver and only occupant of the vehicle.

Most of what transpired next is undisputed because it was captured on Deputy Parker's body camera, which was admitted as an exhibit during the hearing on this motion.  During the encounter, Defendant alerted Deputy Parker that the vehicle had lane assist technology that prevented the vehicle from invading other lanes or touching the dotted line separating the lanes.  Defendant provided his California driver's license and informed Deputy Parker that the vehicle was a rental.  Deputy Parker explained that he would be issuing a citation warning and asked Defendant to step out of the rental vehicle and to sit in Deputy Parker's patrol vehicle while he issued the citation.  While in the patrol vehicle, Deputy Parker asked Defendant several questions, including questions about his route of travel.  Defendant explained to Deputy Parker that he had rented the car in Tampa and was on his way back to Tampa from Atlanta.  More specifically, Defendant

---

[1] The name of Deputy Parker's dog was not brought out in testimony during the hearing, but the dog's name is indicated in the police report attached to Defendant's motion to suppress.

explained that he had flown from California to Tampa and rented the vehicle he was currently driving.  After renting the vehicle in Tampa, he drove it to Atlanta to look at an antique car, but he took I-10 to Montgomery, Alabama before going to Atlanta.

At around 2:45 pm, Deputy Parker requested that Defendant get out of his car and sit beside him in his patrol car while Deputy Parker wrote out a warning citation.  While he was working on the warning citation, Deputy Parker continued to engage in conversation and questioning of Defendant.

At around 2:59 pm, after completing most of the warning citation paperwork, Deputy Parker got out of his patrol car and walked up to Defendant's car to verify the VIN number on the front driver's side window.  That was the last step needed to complete the warning citation.  Almost simultaneously, other officers arrived at the scene.  Upon their arrival, Deputy Parker deployed his dog to sniff Defendant's vehicle.  The dog alerted, meaning that there was likely marijuana, methamphetamine, cocaine, or heroin in the vehicle.  Based on the alert, Deputy Parker conducted a search of the vehicle and uncovered a black suitcase with a black heavy-duty trash bag inside that contained ten square-compressed bricks wrapped in electrical tape.  These bricks later tested positive for cocaine.  In a second suitcase, Deputy Parker located a vacuum sealed bundle of United States currency, totaling $26,408.76, along with a roll of vacuum sealed bags.  Defendant was arrested and subsequently indicted for conspiracy to distribute a controlled substance.

## Legal Standard

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A] decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation occurred . . . and an officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 690, 699 (1996)). "[T]he tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop […] and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). When the tasks tied to the traffic infraction are or should have been completed, authority for the seizure ends. *Id.*

## Analysis

Defendant argues that (1) any evidence and statements obtained as a result of the traffic stop in this case should be suppressed because there was not reasonable suspicion for the initial traffic stop and, (2) the stop, even if valid, was unlawfully prolonged. He further argues that any evidence obtained pursuant to the subsequent dog sniff must be suppressed as fruit of the poisonous tree.

*Initial Traffic Stop*

Defendant first challenges the initial traffic stop, arguing that Deputy Parker did not have reasonable suspicion for the stop because Defendant did not commit any violation of the Georgia traffic code.

At the suppression hearing, Deputy Parker credibly testified that he observed Defendant drift to the right of his lane and touch the dotted line rather than the fog line, which would constitute a violation of Georgia traffic laws. *See* § 40-6-48(1), *OCGA* ("A vehicle shall be driven as nearly as practicable entirely within a single lane."). Although Defendant argues in his motion that he did not commit a traffic violation because touching a fog line does not violate Georgia law, the Court finds that argument unavailing because Defendant's vehicle touched the dotted line, not the fog line. *See Allenbrand v. State*, 458 S.E. 2d 382, 383 (Ga. Ct. App. 1995) (explaining that a reasonable officer would initiate a traffic stop after observing a driver weaving within the lane of travel and touching the adjoining lane); *Candonoza v. Polk County*, No. 4:16-cv-48-HLM, 2017 WL 10410664, at *9 (N.D. Ga. Nov. 6, 2017) (holding that in the § 1983 context, the officer had at least arguable reasonable suspicion to stop the vehicle even if the driver did not commit an actual traffic offense where officer observed driver's vehicle weaving within its center lane). While this traffic violation was extremely minor, under controlling law, Deputy Parker possessed the requisite reasonable suspicion to initiate a traffic stop. The motion to suppress is denied as to this ground.

*Duration of the Stop*

Defendant additionally argues that the traffic stop was unlawfully prolonged. It is well established that police officers may not detain a suspect indefinitely when conducting a traffic stop – instead, the scope and duration of the stop must be "carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see Rodriquez v. U.S.*, 575 U.S. 348, 354 (2015) ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation that warranted the stop . . . and attend to related safety concerns."); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (explaining that a lawful seizure such as a traffic stop may violate the Fourth Amendment if the seizure is prolonged beyond the time necessary to complete the mission).  For a stop to be unlawfully prolonged, "the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *U.S. v. Campbell*, 26 F.4th 860, 884 (11th Cir. 2022).

But officers do not unlawfully prolong a traffic stop when "checking the driver's license, attending to safety concerns, searching for outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance." *U.S. v. Burwell*, 763 F. App'x 840, 844 (11th Cir. 2018) (citing *Rodriguez*, 575 U.S. at 355).  Nor do officers unreasonably prolong a traffic stop by inquiring about travel plans.  *Campbell*, 26 F.4th at 885 ("Generally speaking, questions about travel plans are ordinary inquiries incident to a traffic stop.").

Deputy Parker seems to be fairly well-versed in the legal concepts governing traffic stops generally, and he seems to have carefully considered their application in this case. During the hearing, he testified that he believed he had probable cause or reasonable suspicion to believe Defendant was engaged in criminal activity beyond the traffic violation shortly after he pulled Defendant over. He testified that he reached that conclusion because Defendant: (1) reduced his speed to about 60 miles per hour upon noticing the patrol vehicle and did not speed up again after passing the patrol vehicle; (2) was wearing a three-piece suit; (3) was driving on an interstate corridor widely known by law enforcement as a route for drug trafficking; and (4) was operating a rental vehicle.[2] Whether these facts, without more, rise to the level of reasonable suspicion seems doubtful.

However, shortly after Deputy Parker pulled Defendant over, he learned more. Defendant's hands were shaking when he retrieved his documents, and his demeanor seemed more nervous and agitated than a typical suspect encountered in a routine traffic stop. Even before he pulled Defendant over and spoke with him, Deputy Parker had reason to believe Defendant's vehicle had traveled to Texas and Oklahoma, and by logical deduction, other states between Oklahoma and Georgia, because he had run a "FLOCK" computer check while he was following Defendant.

---

[2] An officer's subjective beliefs as to reasonable suspicion or probable cause are, of course, not dispositive or controlling. *See Bradley v. Beton*, 10 F.4th 1232, 1239 (11th Cir. 2021) (explaining that when determining whether reasonable suspicion for a traffic stop exists, the court should not speculate as to the officer's subjective motivation for the stop but should instead consider the totality of the circumstances to find whether there was an "objective and particularized basis for the stop").

But when Deputy Parker asked Defendant where he had been traveling, Defendant stated he had flown from California to Tampa and rented the vehicle he was currently driving; and after renting the vehicle in Tampa he drove it straight to Atlanta to look at an antique car, but he took I-10 to Montgomery, Alabama before going to Atlanta.

Defendant's statement about his route of travel added weight to the reasonable suspicion analysis in two respects.  First, Defendant's explanation was suspicious because it was inconsistent with the computer information Deputy Parker already had in his possession, which indicated that Defendant's vehicle had traveled to Texas and Oklahoma and likely other states.  Second, the fact that Defendant was wearing a three-piece suit, which by itself is not indicative of criminal activity, became slightly suspicious because it would be rather unusual for a person to wear a three-piece suit during the approximately six-hour drive from Atlanta to Tampa for the purpose of boarding a flight to California.  Moreover, Deputy Parker testified that in his training and experience, people transporting illegal drugs sometimes dress in suits to give law enforcement the impression they are engaging in legitimate business activities.

In view of the totality of circumstances, the Court finds that Deputy Parker had reasonable suspicion to believe Defendant was possibly engaged in criminal activity beyond the traffic violation.  This is a close call.  The information Deputy Parker had at the moment he pulled Defendant over for the traffic violation probably did not rise to the level of reasonable suspicion.  However, the information

Defendant provided about his route of travel, which was inconsistent with the computer data Deputy Parker possessed, was just enough to establish reasonable suspicion to believe Defendant was possibly engaged in criminal activity beyond the traffic violation.  As such, the traffic stop here was valid irrespective of the length of time Deputy Parker took to write the warning citation.

Deputy Parker believed he had probable cause or reasonable suspicion to detain Defendant for more than a traffic violation, so he was not necessarily trying to complete the warning citation as quickly as possible.  Indeed, he admitted during the hearing on cross examination that he was "buying [himself] some time for some backup to get there" while he was writing the warning citation.  But under the facts presented here, which are undisputed and shown on the body camera video, the length of time Defendant was detained to write the warning citation was not unreasonable.  Thus, even if Deputy Parker did not have reasonable suspicion to believe Defendant was possibly engaged in criminal activity beyond the traffic violation, the length of the stop was not unlawful.

From the time Deputy Parker stopped Defendant until the time he completed issuing the warning citation, about seventeen minutes passed.  *See U.S. v. Holt*, 777 F.3d 1234, 1256 ("Although we measure the reasonableness of a stop's duration under the totality of the circumstances, such that '[r]igid time limitations and bright-line rules are generally inappropriate,' we have approved traffic stops lasting, for example, 14 minutes and 50 minutes.") (quoting *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001)).  Deputy Parker testified in depth about the

issuance of the warning citation, including all steps of his investigation. These steps were all reasonable and included checking Defendant's driver's license and the rental status of the vehicle, attending to safety concerns by requesting Defendant exit the vehicle, conducting a license plate check, and verifying the VIN number on the front of the vehicle. One aspect of this case that must be emphasized is the fact that it involved a rental vehicle. The need to check and verify the rental information reasonably added time to the investigation for inquiries that would not be needed in other cases. In addition, Defendant had two driver's licenses so checking both of them reasonably added time to the process. After this work had been done, the warning citation was completed upon verification of the VIN number, which is part of a reasonable investigation.

It is certainly true that Deputy Parker was in no rush to complete the warning citation, and the approximately seventeen minutes he took to do so here trends toward the outer limit of reasonableness in these circumstances. But for all the reasons previously discussed, the Court finds that the stop was not unlawfully prolonged. The motion to suppress is denied as to this ground.

### Canine Sniff

Defendant also challenges the canine search, arguing that because the dog sniff occurred during an unlawfully prolonged detention, the canine alert and subsequent discovery of evidence in his vehicle are fruit of the poisonous tree. Because the initial stop was valid and the stop was not unreasonably prolonged, the dog sniff was lawful. *See Caballes*, 543 U.S. at 410 (holding that "a dog sniff

conducted during a concededly lawful traffic stop . . . does not violate the Fourth Amendment"); *U.S. v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993) ("[P]robable cause arises when a drug-trained canine alerts to drugs."). The motion to suppress is denied as to this ground.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.  Defendant's motion to suppress (Doc. 46) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>10th</u> day of April, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE